# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**CHARLES KEMPER,**

      **Plaintiff,**

**v.**                                       **Case No.  8:11-cv-732-T-30EAJ**

**CORRECTIONS CORPORATION OF
AMERICA and JOHN DEAN ELISON,**

      **Defendants.**

_____/

## ORDER

THIS CAUSE comes before the Court upon Defendant Corrections Corporation of America's Motion for Summary Judgment (Dkt. 46), Defendant John Dean Elison's Motion for Summary Judgment (Dkt. 47), Plaintiff Charles Kemper's Responses in opposition to Defendants' Motions (Dkts. 52 & 53), and Plaintiff Charles Kemper's Motion to Supplement (Dkt. 54).  The Court, upon consideration of the motions, responses, record evidence, and being otherwise advised of the premises, concludes that Defendants' Motions for Summary Judgment and Plaintiff's Motion to Supplement should be granted.  Thus, summary judgment will be entered in favor of Defendants on Counts II and III of Plaintiff's Amended Complaint.

## PROCEDURAL ISSUES

Plaintiff Charles Kemper filed his Amended Complaint in this action on December 7, 2011, in which he asserts, among other things, claims against Defendants Corrections

Corporation of America ("CCA") and its employee John Dean Elison, for an alleged constitutional violation under 42 U.S.C. §1983 (Counts II and III respectively) for failure to administer medication to Kemper while he was incarcerated at the Hernando County Jail. Defendants do not move for summary judgment on Count I of the Amended Complaint, which is a negligence claim under Florida law against CCA.

As an initial matter, the Court notes that Kemper does not oppose CCA's motion for summary judgment. Accordingly, CCA is entitled to summary judgment on Count II of the Amended Complaint. The Court also notes that Kemper's Motion to Supplement the summary judgment record with Elison's November 28, 2012 deposition (taken to perpetuate his testimony for trial because of his failing health) is granted; specifically, the deposition transcript (Dkt. 54; Ex. A thereto) is considered part of the record as requested in Kemper's Motion.

## RELEVANT BACKGROUND

On April 14, 2010, Plaintiff Charles Kemper was placed in CCA's custody as a pre-trial detainee incarcerated at the Hernando County Jail. That same day, an Initial Health Screening Form was completed at approximately 10:32 a.m. The following information was noted on the Initial Health Screening Form in relevant part: (1) Kemper spoke English and there were no barriers to communication; (2) Kemper did not identify any next of kin; (3) Kemper was currently taking the following medications: Keppra, Klonopin, and Trileptal; (4) Kemper did not usually keep any medications with him; (5) Kemper was under a doctor's care but did not remember the doctor's name; (6) Kemper had been treated for depression;

and (7) Kemper was epileptic and refused to have a tuberculosis test (PPD) performed.  The screener and individual who completed the Initial Health Screening Form, RN Maria Plavko, noted that Kemper was to be housed in an Alpha[1] pod on a bottom bunk due to his epilepsy.

Later that same day, Kemper underwent a mental health evaluation.  The Comprehensive Mental Health Evaluation form indicated, in relevant part, the following: (1) Kemper reported being treated for anxiety by his physician and was taking Klonopin; (2) Kemper had a history of placement in special education programs; (3) Kemper's intellect was average or above; (4) Kemper was not taking medication at the facility; (5) Kemper had a reported history of seizures; and (6) Kemper had brain cancer as a child.  The screener and individual who completed the Comprehensive Mental Health Evaluation form, Dr. Robert Klukoff, a psychologist, indicated that Kemper was to be housed in Alpha and would be referred to Dr. James Yelton, a psychiatrist.

The next day, on April 15, 2010, Kemper met with Defendant Dean Elison, one of CCA's registered nurses.  Kemper told Elison that he needed his seizure medication, Trileptal.  According to Elison's Progress Note, electronically signed on April 15, 2010, Elison told Kemper that CCA was attempting to locate Kemper's prescription information, but was having a difficult time obtaining the information to verify Kemper's prescriptions because Kemper could not remember the name of his pharmacy or doctor.  Elison's

---

[1] CCA's Alpha unit is the housing unit devoted to special needs.  It was one of the only units that had direct supervision, i.e., a correctional officer physically assigned in the housing unit 24 hours a day, 7 days a week.  The record reflects that Kemper was placed in this unit based on his seizure history, and that the bottom bunk assignment was to protect him from falling and hurting himself in the event that he suffered a seizure.

assesment of Kemper was that he had "[k]nowledge deficit related to medication". (Dkt. 45-11).  The progress note reflected that Kemper should be monitored in Alpha and that Kemper was to call home to try to obtain the name of his doctor.  The progress note also stated that Elison would attempt to call CVS.

According to Kemper, he met with Elison on several occasions and told Elison that he needed his seizure medication.  During his deposition, Kemper stated that he believed he told Elison that the only pharmacy he used was CVS.  Kemper stated that Elison's attitude toward him was rude and arrogant.  Kemper stated that Elison asked him about his medical condition and told Kemper that he needed Kemper's help locating Kemper's physician and pharmacy.  Kemper stated that, during his third meeting with Elison, Elison "cussed [him] out" because Kemper wrote a grievance about Elison and provided it to Elison's supervisor. (Dkt. 45-15 at 71:14).  Kemper described Elison as "very, very, very belligerent, very mad." (*Id.* at 71:19-20).  Kemper stated that, during this third meeting, Elison repeated that he could not verify Kemper's medication.

The record reflects that, subsequent to his meetings with Kemper, Elison faxed a Request for Medical Records - Inmate Resident form to a CVS pharmacy located in Crystal River, Florida.  The form was signed by Kemper and requested Kemper's medical information.  The record reflects that on April 16, 2010, at approximately 8:47 or 9:47 a.m., CVS faxed the requested medical information to CCA.  The information included Kemper's prescription records and verified his current prescriptions, including Kemper's seizure medication.

On April 16, 2010, at approximately 2:25 p.m., Kemper was found on the floor next to his bottom bunk.  The record reflects that Kemper may have suffered an unwitnessed seizure.  At approximately 5:15 p.m. that same day, Kemper exhibited additional seizure signs as he was bonded out of CCA.  Kemper was brought to the floor by CCA's staff. Kemper requested ambulance transport to an emergency room and was subsequently sent to the hospital. The record reflects that Kemper may have experienced numerous seizures throughout the day on April 16, 2010.

The record is undisputed that Kemper never received his medication prior to bonding out on April 16, 2010.

The record reflects that CCA has policies in place with respect to the dispensing of prescription medication to inmates in its custody.  In relevant part, CCA's policies require that CCA's medical staff verify an inmate's prescription medication.  Specifically, CCA's medical staff cannot rely solely on an inmate's description of his or her medication because the inmate could be dishonest about the prescriptions that he or she is currently taking.  CCA typically verifies an inmate's prescriptions by calling the inmate's physician and/or pharmacy, as indicated on the inmate's intake form.  If the inmate has medications on his or her person at the time that he or she is detained, CCA's medical staff can also use the information stated on the prescription bottle to begin the verification process.  As part of the intake process, the inmate completes a release of record form, which CCA then provides to the physician and/or pharmacy to obtain the inmate's prescription records.

With respect to Kemper, the record is undisputed that, during the intake process, he did not have any medications on his person, he could not remember his physician's name, and he did not identify a next of kin who could supply the requisite information.

## SUMMARY JUDGMENT STANDARD OF REVIEW

Motions for summary judgment should be granted only when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The existence of some factual disputes between the litigants will not defeat an otherwise properly supported summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986) (emphasis in original).  The substantive law applicable to the claimed causes of action will identify which facts are material.  *Id.*  Throughout this analysis, the court must examine the evidence in the light most favorable to the non-movant and draw all justifiable inferences in its favor.  *Id.* at 255.

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories and admissions on file, and designate specific facts showing that there is a genuine issue for trial.  *Celotex,* 477 U.S. at 324.  The evidence must be significantly probative to support the claims.  *Anderson,* 477 U.S. at 248-49 (1986).

This Court may not decide a genuine factual dispute at the summary judgment stage. *Fernandez v. Bankers Nat'l Life Ins. Co.,* 906 F.2d 559, 564 (11th Cir. 1990). "[I]f factual issues are present, the Court must deny the motion and proceed to trial." *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296 (11th Cir. 1983). A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248; *Hoffman v. Allied Corp.,* 912 F.2d 1379 (11th Cir. 1990). However, there must exist a conflict in substantial evidence to pose a jury question. *Verbraeken v. Westinghouse Elec. Corp.,* 881 F.2d 1041, 1045 (11th Cir. 1989).

## DISCUSSION

Elison moves for summary judgment on Kemper's section 1983 claim of medical deliberate indifference. Claims of deliberate indifference to the serious medical needs of pretrial detainees are governed by the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment's Cruel and Unusual Punishment Clause, which governs similar claims by convicted prisoners. *See Andujar v. Rodriguez,* 486 F.3d 1199, 1202 n.3 (11th Cir. 2007). Because the minimum standard for providing medical care to a pretrial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner, the Court may analyze Kemper's claim under the decisional law of both amendments. *See Youmans v. Gagnon,* 626 F.3d 557, 563 n.6 (11th Cir. 2010).

Not every claim of inadequate medical attention rises to the level of a constitutional violation. To show that a prison official acted with deliberate indifference to serious medical needs, a prisoner must establish three elements. First, he must satisfy the objective component by showing that he had a serious medical need. Second, he must satisfy the subjective component by showing that a prison official acted with deliberate indifference. Third, as with any tort claim, the prisoner must show that the injury was caused by the defendant's wrongful conduct. *See Goebert v. Lee County,* 510 F.3d 1312 (11th Cir. 2007).

To establish the subjective component, a prisoner must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence. *See Bozeman v. Orum,* 422 F.3d 1265, 1272 (11th Cir. 2005); *McElligott v. Foley,* 182 F.3d 1248, 1255 (11th Cir. 1999); *Taylor v. Adams,* 221 F.3d 1254, 1258 (11th Cir. 2000). A delay in providing medical treatment can sustain a "deliberate indifference" claim, where the delay has exacerbated the prisoner's injury or unnecessarily prolonged the inmate's pain. *See Harper v Lawrence County, Ala.,* 592 F.3d 1227, 1235 (11th Cir. 2010). In this type of case, the nature of the medical need, the reason for the delay, and the effect of the delay on the prisoner's medical condition are all relevant factors in determining whether the delay has reached constitutionally intolerable proportions. *See Goebert,* 510 F.3d at 1327.

In this case, Elison assumes, at least for purposes of the instant motion, that the record reflects the objective component, i.e., that Kemper had a serious medical need. Elison moves

for summary judgment because the record does not establish the subjective component of the test as a matter of law.  The Court agrees.

The record does not reflect any evidence demonstrating conduct, on the part of Elison, that amounts to more than gross negligence.  The record is undisputed that Elison could not provide Kemper with any medication until the medication was verified.  The record is undisputed that, during the intake process, Kemper did not provide the name of his physician or a next of kin.  The record is also undisputed that Elison contacted CVS pharmacy in an attempt to verify Kemper's prescription medication and CVS subsequently provided the information on the day that Kemper bonded out.

Kemper may quibble with the timing of the events and suggest inconsistencies in the record with respect to when the information from CVS was requested, but these details, even if inconsistent, or disputed, are not material because they do not establish deliberate indifference on the part of Elison.[2]

In sum, the record is undisputed that: (1) Elison had no authority to write prescriptions or provide prescription medication without a doctor's authorization; (2) jail policy prohibited dispensation of unverified prescription medication to any inmates; (3) on April 14, 2010, Kemper was unable to provide the name of his physician or next of kin during the intake process; (4) on April 15, 2010, Elison met with Kemper and attempted to obtain additional information from Kemper to assist with the verification process; (5) Elison subsequently sent

---

[2] For these same reasons, Kemper's motion to request records directly from CVS will be denied as moot.

a request for medical records to CVS pharmacy; (6) on the morning of April 16, 2010, CVS pharmacy sent Kemper's medical information to CCA; (7) Kemper was bonded during the afternoon of April 16, 2010; and (8) at the time that Kemper was in CCA's custody, Kemper did not show signs of a <u>life-threatening</u> medical condition that warranted an immediate referral to CCA's doctor.

As stated above, while Kemper may disagree with the timeliness of the medical care, there is nothing in the record to suggest that any medical delay was due to Elison's deliberate indifference. There is also no evidence of excessive delay. Finally, there is no evidence suggesting that Elison purposely withheld Kemper's medications. In Kemper's response, he focuses on the grievance he completed with respect to Elison, and infers that Elison was deliberately indifferent because of this grievance, but there is simply no evidence in the record to support such an inference. Although it is unfortunate that Kemper did not receive his medications while he was in CCA's custody, it is undisputed that Kemper bonded out the same day CVS provided the verified information to CCA. And no record evidence suggests that Elison saw the information from CVS and deliberately withheld the information.

Simply put, with no evidence that Elison had the authority to write prescriptions or dispense prescription medication without a physician's authorization, there is simply no basis in fact to support Kemper's claim that Elison deliberately disregarded a known serious health risk by withholding Kemper's prescription medications or by capriciously delaying his access to such medications.

It is therefore ORDERED AND ADJUDGED that:

1.      Defendant Corrections Corporation of America's Motion for Summary Judgment (Dkt. 46), Defendant John Dean Elison's Motion for Summary Judgment (Dkt. 47), and Plaintiff Charles Kemper's Motion to Supplement (Dkt. 54) are GRANTED.

2.      Defendant Corrections Corporation of America is granted summary judgment in its favor on Count II of Plaintiff's Amended Complaint.

3.      Defendant John Dean Elison is granted summary judgment in his favor on Count III of Plaintiff's Amended Complaint.

4.      Plaintiff's Motion for Extension of Time to Complete Discovery (Dkt. 55) is DENIED as moot.

        **DONE** and **ORDERED** in Tampa, Florida on December 21, 2012.


                                        _____
                                        JAMES S. MOODY, JR.
                                        UNITED STATES DISTRICT JUDGE

<u>**Copies furnished to:**</u>
Counsel/Parties of Record

S:\Even\2011\11-cv-732.msjs46&47.frm